**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CONRAD RICHARD**                                         **CIVIL ACTION**

**VERSUS**                                                         **NO. 13-4895**

**PARISH OF ORLEANS DISTRICT**                    **SECTION "R"(4)**
**COURT, STATE OF LOUISIANA**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I. Factual Background

The petitioner, Conrad Richard ("Richard"), is an insanity acquittee who is currently on conditional probation while residing in the Harmony Transitional Center, Inc. ("Harmony Center") in Baton Rouge, Louisiana.[2] The record indicates that on September 12, 1989, Richard was charged in Orleans Parish with the August 4, 1989, aggravated arson of a duplex where it was foreseeable that human life may have been endangered.[3] On September 14, 1989, Richard entered a plea of not guilty and not guilty by reason of insanity.[4]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1, 14.

[3] St. Rec. Vol. 1 of 4, Bill of Information, 9/12/89.

[4] St. Rec. Vol. 1 of 4, Minute Entry, 9/14/89.

After appointment of a sanity commission, on November 16, 1989, the state trial court found Richard not competent to proceed and committed him to the Feliciana Forensic Facility, now known as the East Louisiana Mental Health Services - Forensic Division ("ELMHS"), in Jackson, Louisiana.[5]  On May 15, 1990, after continued treatment and evaluation, the Trial Court found Richard competent to proceed to trial.[6]  At the time, Richard had a "working diagnosis" of paranoid schizophrenia that was in remission after treatment with regular doses of prescribed medication.[7]

Richard through counsel waived trial by jury and, upon stipulation to certain prior testimony, medical reports, and the police reports, on May 18, 1990, the Trial Court found Richard to be not guilty and not guilty by reason of insanity.[8]  The Court ordered that Richard be placed in ELMHS for psychiatric care and treatment.[9]  After evaluation by the forensic psychiatrists, on August 9, 1990, the Trial Court adjudged that Richard was not a danger to himself or others, and he was released on probation to live with his sisters.[10]

After Richard missed a required evaluation appointment, the Trial Court had Richard arrested and scheduled a probation revocation hearing for May 12, 1992.[11]  The Court held assessment hearings on May 12 and 19, 1992, and returned Richard to active probation.[12]

---

[5]St. Rec. Vol. 2 of 4, Order of Commitment, 11/16/89; St. Rec. Vol. 1 of 4, Minute Entry, 11/16/89.

[6]St. Rec. Vol. 1 of 4, Docket Entry, 5/15/90; *see also* St. Rec. Vol. 2 of 4, Doctor's Report, 5/18/90.

[7]St. Rec. Vol. 2 of 4, Doctor's Report, 5/18/90.

[8]St. Rec. Vol. 2 of 4, Trial Court Judgment, 5/18/90; St. Rec. Vol. 1 of 4, Docket Entry, 5/18/90.

[9]*Id.*

[10]St. Rec. Vol. 2 of 4, Trial Court Judgment, 8/10/90; Probation Order, 8/9/90.

[11]St. Rec. Vol. 2 of 4, Minute Entry, 8/22/91; Minute Entry, 4/9/92; Letter to the Court, 8/9/91.

[12]St. Rec. Vol. 2 of 4, Minute Entry, 5/12/92; Minute Entry, 5/19/02.

Richard returned to court for a probation revocation hearing on February 12, 1993, at which time the Court ordered that he be evaluated by the prison psychiatrist.[13]  The Court returned him to active probation on March 30, 1993, and ordered that he live with his aunt, enter care at Chartres Mental Health Clinic, and remain under prescribed treatment.[14]

Over five years later, in May of 1998, Richard was arrested and charged with exposing himself in public, flight from an officer, aggravated battery on a police officer, terrorizing a neighborhood by committing acts of violence, criminal trespass, and resisting arrest.[15]  On December 10 and 11, 1998, the Trial Court held hearings to determine Richard's competence and whether he was a danger to himself or others to warrant revocation of his probation.[16]  Following the hearing, on December 11, 1998, the Trial Court resolved that Richard was not competent to proceed and cannot be discharged or released on probation without danger to himself or others.[17]  The Court ordered that he be returned to the ELMHS for treatment.[18]  Additional psychological evaluations periodically were reported to the Trial Court over the next two years.[19]

By letter dated June 30, 2000, the Clinical Director of the Department of Health and Hospitals opined that Richard was competent to assist his attorney with his defense to the May 1998

---

[13]St. Rec. Vol. 2 of 4, Minute Entry, 2/12/93.

[14]St. Rec. Vol. 2 of 4, Minute Entry, 3/30/93.

[15]See St. Rec. Vol 2 of 4, Psychological Evaluation, 3/31/99.

[16]St. Rec. Vol. 2 of 4, Minute Entry, 12/10/98; Minute Entry, 12/11/98.

[17]St. Rec. Vol 2 of 4, Trial Court Judgment, 12/11/98; Minute Entry, 12/11/98.

[18]Id.

[19]St. Rec. Vol. 2 of 4, Psychological Evaluation, 3/31/99; Pscychological Evaluation Update, 3/15/00; Psychological Assessment, 4/18/00; Forensic Competency Report, 6/27/00; Review of Patient Status, 6/29/00.

criminal charges which had led to Richard's re-arrest.[20]  He further indicated that he was preparing to discharge Richard from the mental health system to the custody of the Orleans Parish Criminal Sheriff upon receipt of an order from the Court for Richard to appear for a statutorily required hearing within 30 days.[21]  The Court complied by scheduling the hearing.[22]

At a hearing held on August 21, 2000, Richard's appointed counsel requested evaluation by a sanity commission.[23]  Based on the evaluation, on August 29, 2000, the Trial Court ordered that Richard remain in the ELMHS.[24]

On January 30, 2001, a review panel recommended that Richard be conditionally released to the Harmony Center.[25]  Based on the report, on April 10, 2001, the Trial Court found that Richard no longer needed inpatient treatment and that he could be conditionally released provided he received adequate outpatient treatment, supervision, and monitoring pursuant to La. Code Crim. P. art. 657.1 *et seq.*[26]  Consequently, Richard was placed on conditional release and supervised probation through the Harmony Center for a period of five years with the possibility of annual extensions thereafter.

---

[20]St. Rec. Vol. 2 of 4, Letter to Court, 6/30/00.

[21]*Id.*

[22]St. Rec. Vol. 2 of 4, Minute Entry, 7/27/00.

[23]St. Rec. Vol. 2 of 4 Minute Entry, 8/21/00.

[24]St. Rec. Vol. 2 of 4, Minute Entry, 8/29/00.

[25]St. Rec. Vol. 2 of 4, Review Panel Report, 1/30/01.  Richard was required to comply with these conditions: (1) no access to weapons; (2) refrain from alcohol/illicit drugs and from patronizing establishments where alcohol beverages/ drugs are sold or consumed; (3) submit to routine and random drug screens;(4) the conditional release Program Coordinator was to provide the Court with progress reports regarding his group home adjustment and compliance within 90 days of his placement and every 180 days thereafter; and (5) any violation of the above would constitute his immediate return to the ELMHS.  St. Rec. Vol 1 of 2, Letter to Court (report attached), 1/30/01.

[26]St. Rec. Vol 2 of 4, Trial Court Judgment, 4/10/01; St. Rec. Vol. 1 of 4, Minute Entry, 4/10/01.

The Trial Court held a status hearing on February 24, 2005, and heard from witnesses regarding Richard's progress.[27]  On March 18, 2005, on motion of the Probation & Parole Officer with the Louisiana Department of Corrections, the Trial Court granted Richard permission to move to Deville Plaza Apartments in Baton Rouge, Louisiana subject to certain conditions.[28]

Over the next five years, the Trial Court continued to receive periodic status reports and conducted interim hearings on Richard's mental health condition.[29]  At each relevant interval, the Trial Court issued orders continuing Richard's placement in the Conditional Release Program.[30]

At the annual review hearing held on May 17, 2007, the District Forensic Coordinator and Richard's probation officer appeared on Richard's behalf.[31]  They advised the Court that, based solely on Richard's request, they had no problem with recommending that Richard be taken off of supervised probation.  A letter from the District Forensic Coordinator was received and filed by the Court.[32]  The Court also received testimony from Richard about his janitorial work at the federal

---

[27]St. Rec. Vol. 1 of 4, Minute Entry, 2/24/05; *see also*, St. Rec. Vol. 2 of 4, Report to Court, 1/7/04; Report to Court, 10/9/03.

[28]St. Rec. Vol. 2 of 4, Trial Court Order, 3/18/05.  Richard was allowed to move to the apartments under these conditions: (1) he submit to a weekly drug test by the probation office; (2) submit to  at  least one blood test every three months to ensure a therapeutic level of mental health medication; (3) submit to a mental status exam at least every six months by Dr. Vosburg, as well as any other examinations deemed necessary by forensic staff; (4) maintain at least part-time employment; and (5) comply with all previously ordered general and special conditions of probation.  *Id.*  The Court signed a second order on March 31, 2005 outlining the same ruling.  St. Rec. Vol. 2 of 4, Trial Court Order, 3/31/05.

[29]*See e.g.*, St. Rec. Vol. 1 of 4, Letter to Court, 11/7/05; Doctor's Report, 2/3/06; Letter to Court, 3/3/06; Minute Entry, 3/7/06; Letter to the Court, 5/17/07, Minute Entry, 5/17/07; Minute Entry, 5/8/08; St. Rec. Vol. 2 of 4, Status Review, 5/17/07; Letter to the Court, 12/4/07; Status Review, 5/8/08; Doctor's Letter, 5/8/08; 6-month Review, 12/14/09; 6-month Review, 3/15/10; 6-month Review, 11/30/10; St. Rec. Vol. 3 of 4, Hearing Transcript, 5/17/07.

[30]*See e.g.*, St. Rec. Vol. 1 of 4, Minute Entry, 3/7/06; Minute Entry, 5/8/08; St. Rec. Vol. 2 of 4, Trial Court Order, 5/7/09.

[31]St. Rec. Vol. 1 of 4, Letter to the Court, 5/17/07, Minute Entry, 5/17/07; St. Rec. Vol. 2 of 4, Status Review, 5/17/07; St. Rec. Vol. 3 of 4, Hearing Transcript, 5/17/07.

[32]St. Rec. Vol. 1 of 4, Letter to the Court, 5/17/07.

courthouse in Baton Rouge just blocks from his designated home.  While the Court was impressed, she withheld ruling on his release to see how his new work situation would progress.[33]

In a later report from Rafael Salcedo, Ph.D., on May 8, 2008, Richard was diagnosed with Bipolar Affective Disorder with a history of crack cocaine abuse.[34]  At the time, his medications were under adjustment, and as a result he was showing "some mild manic and psychotic symptoms."[35]  Dr. Salcedo recommended that his conditional probation be extended for a year.  This same conclusion was reached by the District Forensic Coordinator.[36]  In fact, the District Forensic Coordinator continued to recommend every six months in 2009 and 2010, that Richard remain in the Conditional Release Program.[37]

At the review hearing held on April 29, 2010, the Trial Court, exercising its discretion to do so, ordered that Richard's conditional release be extended for another year.[38]  The Trial Court continued to receive interim reports and held its next annual hearing on March 31, 2011.  At that time, the Court ordered the conditional release be extended for another year.[39]

---

[33]St. Rec. Vol. 3 of 4, Hearing Transcript, pp. 8-9, 5/17/07.

[34]St. Rec. Vol. 2 of 4, Doctor's Letter, 5/8/08.

[35]*Id*.

[36]St. Rec. Vol. 2 of 4, Status Review, 5/8/08.

[37]St. Rec. Vol. 2 of 4, 6-month Review, 12/14/09; 6-month Review, 11/30/10.

[38]St. Rec. Vol. 2 of 4, Trial Court Order, 4/29/10; St. Rec. Vol. 1 of 4, Minute Entry, 4/29/10.

[39]St. Rec. Vol. 2 of 4, Trial Court Order, 3/31/11; 6-month Review, 11/30/10; DFC Status Review, 3/31/11; Doctor's Report, 3/31/11; St. Rec. Vol. 1 of 4, Minute Entry, 3/31/11.

On May 1, 2012, the Trial Court held a hearing at which Richard's counsel from the Mental Health Advocacy Service filed a motion for Richard's complete discharge from probation.[40] Counsel argued that Richard's probation lapsed or expired when the Court failed to conduct contradictory hearings between 2007 and 2010, rendering his probation status after that date void and calling for his complete discharge.

The Court denied the motion finding that the necessary assessments had in fact been held each year although the minute entries were deficient on that point.[41]  The Court also directed that Richard be examined by Dr. Salcedo and Dr. Richoux who were present at the hearing.[42]

The doctor's updated report dated May 1, 2012, shows a change in their prior recommendation.[43]  The doctors found Richard to be stabilized on his current medication and "no indication that he poses an imminent threat to himself or others at this juncture."[44]  The doctors also noted that Richard had not engaged in aggressive behavior or been physically violent in several years.  With that, the doctors indicated that "it seems difficult to justify, from a clinical standpoint, recommending that Mr. Richard's conditional release status be extended for an additional year." They also found no basis for a change in his placement and that he should be allowed visitation with his sister.

---

[40]St. Rec. Vol. 1 of 4, Minute Entry, 5/1/12; Motion for Complete Discharge, dated 3/20/12; St. Rec. Vol. 4 of 4, Hearing Transcript, 5/1/12.

[41]St. Rec. Vol. 4 of 4, Hearing Transcript, 5/1/12.

[42]St. Rec. Vol. 4 of 4, Hearing Transcript, p. 3, 5/1/12.

[43]St. Rec. Vol. 1 of 4, Doctor's Report, 5/1/12.

[44]*Id.*

The Louisiana Fourth Circuit and the Louisiana Supreme Court summarily denied Richard's related writ applications filed by his counsel finding no error in the Trial Court's ruling on the motion for complete discharge.[45]

In the meantime, contrary to the doctors' prior report, the District Forensic Coordinator's Status Review dated June 15, 2012, reflects that Richard's forensic consultant, Charles Vosburg, Ph.D., and the District Forensic Coordinator recommended that Richard remain in the Conditional Release Program, basing his improved adjustments on the fact that he was being monitored and supervised.[46]   The report also noted the need to address his continued probation status in light of counsel's motion.

At the next scheduled review hearing held on November 29, 2012, Richard's counsel filed a second motion for Richard's complete discharge from probation based on the Trial Court's failure to hold a full contradictory hearing in 2009 before extending Richard's probation, leaving that and any subsequent extension void.[47]   The Court denied the motion based on the fact that the annual reviews were completed and no further hearings were requested by Richard's counsel.[48]

While the Court addressed that motion, Drs. Salcedo and Richoux spoke privately with Richard.  The record reflects that, when the hearing continued, Richard had left the courthouse to return to Baton Rouge and, his counsel waived his presence for the show cause portion of the

---

[45]St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2012-KK-2119, 11/16/12; La. S. Ct. Writ Application, 12-KK-2119, 9/26/12; St. Rec. Vol. 3 of 4, 4th Cir. Order, 2012-K-0687, 9/10/12; 4th Cir. Writ Application, 2012-K-687, 5/9/12.

[46]St. Rec. Vol. 1 of 4, DFC Status Review, 6/15/12.

[47]St. Rec. Vol. 1 of 4, Motion for Complete Discharge, 11/29/12; Minute Entry, 11/29/12; St. Rec. Vol. 4 of 4, Hearing Transcript, 11/29/12.

[48]St. Rec. Vol. 4 of 4, Hearing Transcript, pp. 4-5, 11/29/12; Trial Court Order, 11/29/12; .

hearing.[49]  Dr. Richoux testified that the results he and Dr. Salcedo reached that day were no different from what they reported after their prior visit with Richard in June of 2012:[50]

> . . . so it would be illogical, I guess, based on the observations I just made to take any different position for myself and Dr. Salcedo that which we offered to the Court back in June, namely, that we thought he was a suitable candidate to be - - for lack of a better term - - cut loose.

Dr. Richoux noted that the district director, Eric Brady, and the probation officer had regular visits with Richard.  The doctor acknowledged that he and Dr. Salcedo spoke with Mr. Brady about his reasons for requesting an extension of the probation.[51]  Dr. Richoux noted that he had no problem with the Court extending the probation period, because Richard's current home and work situation was already "very free-to-come-and-go."[52]  He suggested that if Richard stayed on probation, the conditions should not be any stricter and he should be allowed to visit with his sister.  The Court thereafter ordered that the conditional probation be extended for another year.[53]

The subsequent DFC Status Review reports provided in the record continued to recommend continuation of the probation in the Conditional Release Program.[54]  While the Trial Court continued to receive these status reports, Richard's counsel sought review of the Court's Order denying the second motion for complete discharge.[55]

---

[49]*Id.*, p. 6-7.

[50]*Id.*, p. 9.  The record does not contain a report from the doctors in June of 2012.

[51]*Id.*, p. 9-10.

[52]*Id.*, p. 9.

[53]*Id.*, p. 11; St. Rec. Vol. 1 of 4, Trial Court Order (2), 11/29/12.

[54]St. Rec. Vol. 1 of 4, DFC Status Review, 12/20/12; DFC Status Review, 6/4/13.

[55]St. Rec. Vol. 1 of 4, DFC Status Review, 12/20/12.

On January 31, 2013, the Louisiana Fourth Circuit found no error in the Trial Court's ruling on the motion. The Court, however, remanded the matter for the Trial Court to hold a full evidentiary hearing on the underlying issue of whether Richard's continued probation was warranted or should be terminated.[56] The Louisiana Supreme Court denied Richard's related writ application without stated reasons on April 5, 2013.[57]

As directed by the Louisiana Fourth Circuit, the Trial Court held another full hearing on June 4, 2013, to determine the need to extend the probation.[58] The record reflects that Dr. Richoux again testified at the hearing.[59] The Trial Court ordered that Richard remain on probation through the Conditional Release Program. Richard did not seek review of this ruling.

## II.   **Prior Federal Petition**

On November 27, 2007, Richard filed his first federal petition for habeas corpus relief, Civ. Action No. 07-9225"R"(4), which this Court construed as a challenge to his perpetual probationary status.[60] After review of his pleadings and the record, the undersigned Magistrate Judge issued a Report and Recommendation recommending that Richard's petition be dismissed without prejudice

---

[56]St. Rec. Vol. 3 of 4, 4th Cir. Order, 2012-K-1724, 1/31/13; 4th Cir. Writ Application, 2012-K-1724, 12/14/12.

[57]St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2013-KK-0416, 4/5/13; La. S. Ct. Writ Application, 13-KK-416, 2/21/13.

[58]St. Rec. Vol. 1 of 4, Minute Entry, 6/4/13; *see also*, DFC Status Review, 6/4/13.

[59]*Id*.

[60]Civ. Action No. 07-9225, Rec. Doc. No. 37. Richard originally submitted this petition to the United States Middle District and the matter was transferred here for adjudication. *Id*., Rec. Doc. Nos. 1, 2.

for failure to exhaust.[61]  The District Judge thereafter issued and Order and Judgment on January 20 and 25, 2011, respectively, dismissing the petition without prejudice for that reason.[62]

## III.     Current Federal Petition

On June 17, 2013, the clerk of the United States District Court for the Middle District of Louisiana filed Richard's federal petition for federal habeas corpus relief in which he challenges his placement on conditional probation over twenty years after his verdict of not guilty and not guilty by reason of insanity in 1990.  The matter was transferred to this Court for consideration of his claims.[63]

Under a broad reading of his petition reflects the following arguments challenging his conditional probation status: (1) he is being indefinitely confined without enforcement of his probation status or credit for time served or good-time credits towards his release; (2) he has not had a hearing before the state court judge since 1998; (3) his prior federal petition was transferred without jurisdiction and venue; and (4) his case requires intervention by the court through administrative law and procedure and enforcement of its determination.  In addition, Richard seeks complete discharge from probation with a change of jurisdiction over his case to the Middle District.

The State filed a response in opposition to Richard's petition contending that the petition is a prohibited second or successive petition and should be dismissed for that reason.[64]  In his rambling

---

[61]Civ. Action No. 07-9225, Rec. Doc. No. 37.

[62]Civ. Action No. 07-9225, Rec. Doc. Nos. 39, 40.

[63]Rec. Doc. No. 3.

[64]Rec. Doc. No. 14.

and mostly undecipherable replies to the State's opposition response, Richard seems to suggest that he should be granted a pardon under Louisiana law and released from continued custody.[65]

## IV.  General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[66] applies to this petition, which is deemed filed when it was delivered by Richard to a federal court on June 17, 2013.[67]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State concedes that Richard is in custody for purposes of this Court's jurisdiction.  The State argues, however, that Richard's petition is a prohibited second or successive petition over which this Court has no jurisdiction.  As discussed in the following section, the law does not support the State's defense.  This Court does have jurisdiction to consider Richard's

---

[65]Rec. Doc. Nos. 15, 16.

[66]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[67]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Richard filed the petition with the clerk of the Middle District on the date he signed it, June 17, 2013.  There is no indication in the record that the petition was mailed from a prison or detention center.  It does not appear that the mailbox rule is applicable in this case.

petition. The record also reflects that Richard's underlying challenge to his continued probation status is timely, however, his claims were not exhausted in the state courts.

## V.    Federal Jurisdiction and Venue

Before proceeding to the merits of Richard's claims, the Court notes that the State and Richard have addressed issues regarding this Court's jurisdiction over his petition. The State has addressed Richard's custody status and Richard suggests that his case should be heard in the Middle District of Louisiana. To clarify this Court's authority, each of these concerns is addressed below.

### A.    Custody Requirement

The State spent considerable effort discussing and conceding Richard's custody status for purposes of federal jurisdiction over this habeas petition. To be eligible for habeas relief, a petitioner must be "in custody" and must have exhausted his available state court remedies. *Dickerson v. Louisiana*, 816 F.2d 220, 224 (5th Cir. 1987). Under 28 U.S.C. § 2241(d), "the United States district courts [have] jurisdiction to entertain petitions for habeas relief <u>only</u> from persons who are 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (quoting 28 U.S.C. § 2241(c)(3)) (emphasis added); 28 U.S.C. § 2254(a).

The record reflects that Richard is in custody for purposes of challenging his current probation order. The United States Supreme Court has held that nothing in the language of the AEDPA or § 2254 requires that the state court judgment pursuant to which a person is in custody be a criminal conviction. *Duncan v. Walker*, 533 U.S. 167, 176 (2001). The Supreme Court further recognized that federal habeas corpus review may be available to challenge the legality of a state court order of civil commitment. *Id.* at 176 (citing *Francois v. Henderson*, 850 F.2d 231 (5th Cir.

1988) (addressing a Louisiana petitioner's challenge under § 2254 to a state court's commitment of

a person to a mental institution upon a verdict of not guilty by reason of insanity)).  In addition, a

petitioner like Richard who is under the restrictions of probation and living in a transition facility

is in custody for purposes of habeas review.  *Wottlin v. Fleming*, 136 F.3d 1032, 1034 n.1 (5th Cir.

1998); *Clark v. Prichard*, 812 F.2d 991, 997 (5th Cir.1987) ("A person on probation and subject to

the conditions of probation is 'in custody' for purposes of the habeas corpus statute."); *Spring v.

Caldwell*, 692 F.2d 994, 996 (5th Cir.1982).

The record reflects that Richard is in custody and this Court has jurisdiction to consider the

petition seeking relief from the probation orders.

### B.    Venue (*See* Argument No. 3 and Request for Relief)

Under a broad reading, Richard complains that his original federal petition was transferred

out of the Middle District of Louisiana and that his claims should be addressed by that court to

protect his due process rights.  Richard is presently housed in a transitional facility in Baton Rouge,

Louisiana within the jurisdiction of the Middle District of Louisiana.  28 U.S.C. § 98(b).  However,

he is challenging his continued probation status based on the orders issued by the state court judge

in Orleans Parish which is within the jurisdiction of this district court.  28 U.S.C. § 98(a).

The venue provisions for habeas petitions like Richard's is found in 28 U.S.C. § 2241(d),

which provides as follows:

> Where an application for a writ of habeas corpus is made by a person in custody
> under the judgment and sentence of a State court of a State which contains two or
> more Federal judicial districts, the application may be filed in the district court for
> the district wherein such person is in custody or in the district court for the district
> within which the State court was held which convicted and sentenced him and each
> of such district courts shall have concurrent jurisdiction to entertain the application.
> The district court for the district wherein such an application is filed in the exercise

of its discretion and in furtherance of justice may transfer the application to the other district court for hearing and determination.

(emphasis added). The Fifth Circuit has held that this statute is jurisdictional. *Carmona v. Andrews*, 357 F.3d 535, 537 (5th Cir. 2004); *Webb v. Beto*, 362 F.2d 105, 108 (5th Cir. 1966), *cert. denied*, 385 U.S. 940, *reh'g denied*, 386 U.S. 930 (1967).

Under § 2241(d), federal courts have ordinarily recognized and held that the most appropriate venue for challenges to the legality of the conviction and order of sentence are best heard in the district where the state conviction occurred and sentencing order was issued. *Story v. Collins*, 920 F.2d 1247, 1250-51 (5th Cir. 1991). This is based in part on the ease of access to the relevant records and potential witnesses involved in the decision making process.

For these reasons, this District Court is a proper jurisdiction to hear Richard's case and a more appropriate venue to consider his challenges to the orders from the Orleans Parish Criminal District Court under which he remains on probation.

### C.    Current Petition is Not Prohibited as Second or Successive

The State alleges that Richard's petition is a prohibited second or successive petition. Under 28 U.S.C. §§ 2244(b)(1) and (2), any new or previously raised claim presented in a second or successive § 2254 petition is to be dismissed. The United States Fifth Circuit Court of Appeal has made clear that "a prisoner's application is not second or successive simply because it follows an earlier federal petition." *In re Cain*, 137 F.3d 234, 235 (5th Cir. 1998). The Court has consistently held that an adjudication <u>on the merits</u> is necessary before a subsequent petition is considered "second or successive." *See Barrientes v. Johnson*, 221 F.3d 741 (5th Cir. 2000) (when prior petition is dismissed without prejudice, subsequent filing is not successive) (citing *Slack v. McDaniel*, 529 U.S. 473 (2000) (subsequent filing not successive when prior filing was dismissed

without prejudice)), *cert. dism.*, 531 U.S. 1134 (2001); *Graham v. Johnson*, 168 F.3d 762 (5th Cir. 1999) ("Under current law, however, it is clear that an application <u>filed after a previous application was fully adjudicated on the merits</u> is a second or successive application within the meaning of 28 U.S.C. § 2244(b), even if it contains claims never before raised." (emphasis added)), *cert. denied*, 529 U.S. 1097 (2000).

As outlined above, this Court did not consider the merits of Richard's first federal petition. The petition instead was dismissed <u>without prejudice</u> for failure to exhaust state court remedies.  His current petition is in no way a prohibited second or successive petition.  *Slack*, 529 U.S. at 487; *Strickland v. Thaler*, 701 F.3d 171, 174 (5th Cir. 2012).  The State's successiveness defense is wholly rejected.

## VI.   <u>Exhaustion Doctrine</u>

As discussed below, exhaustion requires presentation of each claim and legal theory through each required level of state court review.  For the reasons to follow, Richard has not sought review of the state trial court's continuation of his probation status.  The State, however, failed to address the exhaustion doctrine in its response but has not waived the defense.  The Court therefore raises Richard's failure to exhaust *sua sponte*. *Accord Kurtzemann v. Quarterman*, 306 F. App'x 205, 206 (5th Cir. 2009) (district court may sua sponte raise failure to exhaust, and notice of and an opportunity to respond to the exhaustion issue must be given) (citing *Day v. McDonough*, 547 U.S. 198, 209-10 (2006) (addressing limitations) and *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998) (addressing exhaustion)); *see also*, 28 U.S.C. § 2254(b)(3) (the State's failure to raise exhaustion is not a waiver of the defense).

Accordingly, **petitioner is hereby specifically advised and instructed that this report and recommendation is notice to him that this court is *sua sponte* raising the issue of exhaustion and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.** *Magouirk*, 144 F.3d at 350, 360.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

17

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a prisoner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id*., 541 U.S. at 32.

Under a broad reading, Richard complains that he is being denied due process because of his perpetual return to conditional probation with the restriction that he live in the Harmony Center (or similar location) instead of attaining a complete discharge from probation. Richard has not presented this claim to the state's higher courts before seeking federal relief.

Richard's counsel has sought review in the Louisiana Fourth Circuit and the Louisiana Supreme Court on two occasions, both in 2012. Both tracks of review stemmed exclusively from the state trial court's denial of the counsel-filed motions for Richard's complete discharge from probation. Both motions were based on the procedural issue of the Trial Court's failure to conduct contradictory hearings before extending his probation. Neither counsel nor Richard have requested that the Louisiana higher courts review the Trial Court's actual extension of the probation on substantive grounds as Richard does here in his federal petition. On its own accord, the Louisiana Fourth Circuit directed that the Trial Court hold such a hearing.

18

The hearing held on June 4, 2013, apparently was a contradictory hearing at which the Court heard the testimony of Dr. Richoux.  The record, however, does not include a transcript from that hearing, the resolve of Dr. Richoux's medical findings, or the basis for the Trial Court's decision to extend probation.  The record also does not contain any indication that Richard or his counsel sought review of the findings made at that time.[68]

Exhaustion of state court review in this case is imperative before his claims can be properly considered.  The United States Supreme Court determined in *Foucha v. Louisiana*, 504 U.S. 71 (1992) that an insanity acquittee may be confined in a mental institution, consistently with due process standards, as long as the State can prove by clear and convincing evidence that he is both mentally ill and dangerous, even when the basis for his original confinement no longer exists. *Foucha*, 504 U.S. at 76-86 (citing *Jones v. United States*, 463 U.S. 354, 363 (1983) and *Jackson v. Indiana*, 406 U.S. 715, 724 (1972)); *Jackson v. Foti*, 670 F.2d 516 (1982).  The questions of an insanity acquittee's mental illness and dangerousness are questions of fact entitled to deference on federal habeas review.  *Francis S. v. Stone*, 221 F.3d 100 (2d Cir. 2000); *United States v. Jackson*, 19 F.3d 1003, 1006 (5th Cir. 1994) (mental competence and dangerousness are questions of fact); *but see John M. v. Stone*, 72 F. Supp.2d 316, 320 (S.D.N.Y. 1999) (citing *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993) (mental competency is a mixed question of law and fact)).  To overcome the presumption of correctness, the petitioner must show by "clear and convincing evidence" that the state court's ruling was not reasonable in light of the evidence before it.  *Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

---

[68]A member of the Court's staff confirmed with the clerks of these courts that Richard had not filed for review since June 4, 2013.

In light of these standards, requiring Richard to exhaust is not a futile gesture.  In this instance, the Court has no findings before it to be weighed under the *Foucha* standards nor any decision on which deference can be assessed.[69]  Richard's failure to exhaust state court review prevents this Court from evaluating the merits of his claim.[70]

The Court also recognizes that, under Louisiana law, Richard's conditional release on probation as ordered each year is an extension of that status originally ordered by the state trial court in 2001 yet standing as a renewed restriction on his complete freedom.  This peculiar status would render moot any question that Richard's right to federal review will expire under the AEDPA's limitations provisions before he can return with his exhausted claims.

Based on the record, Richard has not exhausted state court remedies on the  issue of the propriety of the continuation of his conditional release on probation.  The record discloses no good cause for his failure to properly and fully exhaust his claims in the state courts, and the Court can find none from its review of the record.  *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).  Richard's *pro se* status does not excuse his failure to exhaust.  *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (*pro se* status does not constitute "good cause" for failure to exhaust state remedies); *Josselyn v. Dennehy*, 475 F.3d 1, 5 (1st Cir. 2007) (ignorance of the law does not constitute "good cause" for failure to exhaust).  The petition, therefore, should be dismissed for failure to exhaust available state

---

[69]The Court is also left with the question whether *Foucha* has already been met by the fact that Richard is on probation and not in an institution.  "'[T]he committed acquittee is entitled to release when he has recovered his sanity <u>or</u> is no longer dangerous[.]'" (emphasis added) *Foucha*, 504 U.S. at 77 (quoting *Jones*, 463 U.S. at 368).  Under Louisiana law, Richard is on conditional release because he is no longer insane or a danger to himself or others under the *Foucha* doctrine.  La. Code Crim. P. art. 657.2; *State v. Golston*, 67 So.2d 452, 464 (La. 2011); *State v. Roman*, 802 So.2d 1281, 1284-85 (La. 2001); *State v. Perez*, 648 So.2d 1319, 1320 (La. 1995); *State v. Watson*, 779 So.2d 46, 48 (La. App. 4th Cir. 2001).  Because no such question has been asked of the state courts, the Court defers to comity in to allow the state court's to first assess the issue.

[70]The Court notes that while relief can be denied, it can not be granted on an unexhausted claim.  *See* 28 U.S.C. § 2254(b)(2).

20

court remedies. *Rhines*, 544 U.S. at 277-78 (dismissal is appropriate where no good cause is shown for the failure to exhaust).

## VII.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Conrad Richard's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[71]

New Orleans, Louisiana, this 7th day of July, 2014.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[71]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

21